And we'll go to the last case of the day, which is Legacy Church v. Collins. If you all will... I think we're all ready. And so we'll hear from the appellant. Good afternoon, your honors. My name is Colin Hunter with the Barnett Law Firm, and I represent the Plaintiff Appellant Legacy Church. And this case began about... on April 11th, 2020, so about a year and a month to the day from today. And it began on Saturday, April 11th, the day before Easter, when the Secretary of... New Mexico Secretary of Health added houses of worship to the mass-gathering prohibition with less than 24 hours to Easter. Essentially canceling all Easter services throughout the state, limiting the number of individuals allowed in the facility to four, plus what was necessary for audio-visual services. A lot has changed regarding the legal developments and the facts since April 11th. Let's just make sure we know the table, what's on the table. You did not sue for damages, as you couldn't, obviously. You're suing only for equitable relief at this point. Isn't that right? That's correct. Okay. And I have a similar question, Mr. Hunter. Are you appealing only the denial of a preliminary injunction, or are you also appealing the dismissal? We're appealing... there's the denial of the temporary injunction and then the permanent injunction. And so we're appealing basically how the court has, I guess, handled or the analysis that the court has undertaken in the April 11th order and then the May... I'm sorry, the June or the July 13th memorandum opinion and order. So that... I think we need to clarify. You're seeking ongoing or future relief, an injunction that they won't do this again. Correct. If we... But if we find... does that require us to find that the restriction a year ago was or was not constitutional? No. Or does it only require us to conclude? I mean, alternatively, if we were to conclude that no relief could be given now because the secretary and the administrators have said they're not going to enforce those old rules anymore, does that end the request for injunctive relief? I don't think so. I think it ties in with the question of mootness. And, you know, I think there's four reasons why this case is not moot and why this court weighing in on what the court decided in the April 11th or April 13th order and then July 13th order, it's unnecessary for the court to find whether or not those orders were unconstitutional. The legal landscape has changed markedly since then. Even since the briefing to today, during the briefing, in between the first order and the second order, there was substantive legal decisions at each step of the way that I think changed the calculus for all the parties. You know, in between April 13th or April 17th and then the July 13th order, you had South Bay Pentecostal Church, which in the July 13th order, which I think is the rubric that Judge Browning or the prison that he used in analyzing the June 30th order. And that was the law of the land, even though it was a pure current decision, and it was with a concurring opinion by Judge Roberts. You know, that was kind of the status quo up until after Legacy had filed its brief in chief, the secretary had answered, and then the Brooklyn Diocese decision changed the landscape dramatically. And then we filed the reply, which we would submit the prism under whether this was viewed as markedly different prior, before Brooklyn Diocese, and after Brooklyn Diocese. We filed a reply, the secretary filed a surreply, and then even after the surreply was filed, the Supreme Court in tandem, B. Newsom, further added legal clarification to how these cases are to be viewed. When this case was filed way back on April 11th, 2020, there was no what I would call COVID in church cases. There was a case out of Oklahoma, a restraining order case, where a district court judge had granted a restraining order, but there was no directly on-point precedent from either the Tenth Circuit or the Supreme Court. And what's evolved since then, you know, some commentators call it the shadow docket, it's been the Supreme Court giving guidance to lots of times the Ninth Circuit. There is a Tenth Circuit case that falls into this... Morass. Yeah, this morass, where it is High Plain Harvest Church versus Jared Polis, and where the Supreme Court offers instructions to the Tenth Circuit to offer to the district court. And, you know, there's some discussion in the secretary's surreply that these decisions on the shadow docket aren't precedent. But when you look at the direction that the Supreme Court is giving the circuit courts and the district courts, you know, it sort of seems like precedent because they're very specific in their instructions on how these are to be handled. Can I just back up? I'm still trying to figure out what exactly the appeal involves. You mentioned the July 13th order. As I understand, the July 13th order denied Legacy Church's application for a preliminary injunction. Is that right? That's correct. And that's the latest order that you've appealed, correct? Correct. And, you know, the way this... And a preliminary injunction terminates by definition when the action is terminated, right? That's the life of a preliminary injunction, right? Correct. And so once the action is terminated in district court, the denial of a preliminary injunction or the grant of a preliminary injunction really no longer matters. So I have a question about whether the denial of a preliminary injunction is moot without regard to opposing counsel's arguments, whether or not it's mooted automatically when Judge Browning dismissed the action because you haven't appealed the dismissal of the action. You've appealed the denial of a preliminary injunction. You know, the way it evolved is because the orders were... The public health orders were coming out sometimes even once a week, we weren't given an opportunity to amend in this case because Judge Browning held that we put the other parties on notice that we were intending to argue all the successive public health orders that had been issued between April 11th and June 30th and that they were on notice. So he went and analyzed... I understand that. He analyzed all of them. And so if we say, okay, well, Judge Browning, you were wrong. You should have granted Legacy Church's preliminary injunction. All of that is completely academic because we have no jurisdiction to his dismissal of Legacy Church's action. And so all the relief that you would be getting is an academic exercise that in this past period of time, in the past tense, Legacy Church should have been entitled to a preliminary, to interim relief, which would have been terminated when he dismissed the action. So I don't understand why we're here. I think what we would ask the court is for either instructions of finding that how the cases were... They should have been considered under strict scrutiny, that how the public health orders were analyzed from April 11th to June 30th was improper. And with either the court making, providing guidance on how the lower court should handle these or with instructions to the district court to consider the request for injunctive relief in light of Brooklyn Archdiocese and in light of Tandem v. Newsom specifically. I think those two decisions are directly on point. But how would that give you any relief in this case where the action is now dismissed, the directives, the 30-day restrictions are gone of their own weight, every single... Even though it looks to me like you only objected really to the June 30th order, if we accept that that was somehow modified by action of Judge Browning considering a broader group of them, they're all expired. How does that... What relief could we give you? You don't have an action. You're not appealing the dismissal of the action. The orders that would have supported preliminary relief are all gone. You admit that. I just don't see what kind of relief we can give you, and we can't give you any kind of general direction of how it should be handled in the future. I think you can provide the trial court general direction on how it should be handled. And this is a case where there's a live controversy. What could be handled? Because there's no action anymore. We don't even know if it would be the same district judge. How a plaintiff, like an entity such as Legacy Church, how a request for injunctive relief... And these orders are ongoing. They don't expire. There's been a public health order in effect since April 11th, 2020, when this action was filed until today. There's still a public health order in effect. And, you know, if we're not... If we can't get relief, then it is... Essentially, I think we would escape the opportunity for relief if we didn't have the ability to seek a review of denials of injunctive relief when the orders were changing because they were mooted. And I guess I don't really have a good answer for the court on the interplay between the dismissal of the action and the denial of the preliminary and permanent injunction, and the fact that the dismissal of the action was not appealed. I mean, even if the action hadn't been dismissed, you're really trying to argue a capable of repetition. But that can't be argued in the abstract. It has to be argued in the instance of a case. And as Judge Bachmeyer pointed out, the case is gone, and you're not appealing the dismissal of the case. So I just don't know where we can go from here. You know, if you look at Justice Gorsuch, his fourth point in Tandem v. Newsom when he talks about the capable of repetition, you know, I think this falls squarely within that rubric. You know, and in this particular instance, Judge Browning did not allow us to amend. You know, when he ruled on June 30th, on the June 30th order, he went and analyzed it as if, you know, we had amended, we had made all these arguments that we would have made for events that subsequent to April 11th. And those are stuff that we would have included in our complaint. And so we were never given that opportunity. And so we would hope that the court would give us the broadest possible, as I think Judge Browning intended, look at, you know, whether or not injunctive relief is warranted in this case. And, you know, I would, you know, we would assert that, you know, it's warranted. You know, this particular case is particular subject or repetitions is likely because it's at the discretion of a single executive. You know, throughout this, you know, a single executive, you know, has been amending orders, adding, changing capacity limitations. You know, almost, I think there was 36 orders in 45 weeks, you know, while this manner was pending. The problem is that the constant movement from the secretary is in your favor to the point that in the most recent submission, and she can correct me if I've misstated, but it seems to me that she's essentially stipulating that, yeah, what Judge Browning did on July 13th is no longer compatible with Supreme Court jurisprudence. So it seems to me that, you know, you've won. You know, it goes both ways, but I would agree it's gone in our favor. But, you know, it's also been taken away. And so the capacity restrictions, you know, it seems like any time we were going to court before Judge Browning, they would come, the secretary would become very sympathetic to our view and stuff would go in our direction. And then when we weren't in a position to go back in front of court before Judge Browning, they'd become more restrictive. And so there is, without a kind of framework for how this should be handled in the future, I think it's subject to repetition. I mean, I'm sorry. No, go ahead. In the absence of a pending case, aren't you essentially asking us for an advisory opinion? Because if you had appealed the dismissal of the action, I agree with you that the tandem discussion of the moving goalposts is very helpful to you on the question of mootness. But it's that the action isn't moot. But here, there is no action. You know, I see my time is up. I'm going to look into that question. If I could have possibly one minute after the appellee goes to answer the question, I would appreciate that. I'll give you a minute, certainly. I'll grant your request. Okay. Thank you, Judge. Judge McHugh, do you have any additional questions? No. Judge Abell? No. Okay. Thank you. We'll hear from the appellee. Good afternoon. Your Honors, may it please the Court, my name is Holly Agajanian. I'm the Chief General Counsel to Governor Michelle Lujan Grisham. And I represent the appellees in this matter. Your Honors have hit upon a lot of the very key points that I had written down myself in terms of essentially whether or not this is what we're looking for as an advisory opinion, which I submit is what the appellants are asking for. There are a few things of note that I actually found very interesting during Mr. Hunter's argument, which is essentially we don't have a lot of disagreement on whether or not Judge Browning's ruling was correct at the time, based on established precedent or based on the rulings that were coming out of the Supreme Court during this period of time. You know, these COVID public health orders and the litigation around COVID, it's actually frankly fascinating, right, that we are in this time where we have this public health emergency that really has some jurisprudential guidance, but that the courts are sort of building the boat as we sail it, right, in terms of figuring out what the parameters can be on these restrictions. So what I would note, and I think Mr. Hunter wouldn't dispute this, and I know it's in their reply brief on page 21, at the very least what they concede is when the South Bay number one case came out after the April order from Judge Browning, that put an end to the issue of whether or not what the state had done with regard to its public health orders was constitutional. Now, what they're asking for really is a look back about now that Tandon has come out and perhaps changed or refined the way the analysis should go, they want to look back with today's facts and today's law, frankly, because in the universe that we exist now, we have vaccines and we have a better trending outlook with regard to COVID. And so that's the other part of it is that we can't forget where we were a year ago, a year and change ago, with regard to the uptick in cases, no vaccines and this becoming, you know, we've got to remember where we were in April of last year. Well, if there were a case pending, I don't think that we're prohibited from looking at the health orders with the benefit of tandem. You know, what that case does is basically it tells us that we can re-evaluate the governor's assessment of the proper comparators between churches. And, you know, if we were in a situation where we had a pending case, I would be reluctant not to apply tandem in deciding the constitutionality of these orders. Well, and what's fascinating about that, Judge McHugh, is what set of facts we would use to do that analysis. Would we use the, because as Justice Roberts said in his concurrence, these are dynamic fact-specific inquiries, right? So in terms of looking at what the public health orders were doing a year ago, if we're doing a look back with tandem, you know, is that look back going to be with regard to how the COVID crisis was at the time or how it is now? Well, I think the tandem case assumes for purposes of analysis that we're of significant governmental interest in the health. And the question is whether it is appropriate to treat churches differently than other operations. And so I guess I'm not understanding why, if indeed we had a pending case, we wouldn't be doing our best to follow the direction from tandem. Thank you, Your Honor. And, of course, we don't have a pending case. But what I would submit was if you did do a look back with tandem, what you would see is that if you're looking at the comparators, houses of worship are open at certain capacities. There's a period of time where it's essentially what I'm going to analogize as it is to sort of takeout service with like almost similar to a restaurant where they can be open enough to do takeout service. But later what you have are houses of worship open at similar, if not more favorable limitations than essential retail services. So it's our position that even if you use tandem going back, it would still survive the strict scrutiny. And at that point, actually a year ago, Your Honor, our schools were closed entirely. And I know tandem, for example, use schools as an example. Our schools are now open. They've just opened in the last couple weeks. But, again, if you're sort of looking at what they consider to be sort of what the general applicability standard is, I would submit that a year ago it would have still survived the strict scrutiny. Okay. That surprises me because I thought your 28-J letter, your most recent 28-J letter, was essentially conceding that the July 13th order of Judge Brown under current, i.e. post-tandem jurisprudence, is unconstitutional. If you're not agreeing to that, and you're talking about the fact that we are now on the, you know, we have vaccines available outside of our record, those are counter to what we ordinarily do. When you talked about the ambiguity of the time period, I don't think there's any ambiguity at all. We look at the facts that were available to the district judge when he or she granted or denied a preliminary injunction. So if we are looking at the facts that were available to Judge Browning when he made that decision on July the 13th, are you conceding or are you disputing that that July 13th order would no longer stand on the facts available at that time under current jurisprudence tandem? Your Honor, in your hypothetical, and I have been listening today and listened to your hypothetical, so I was expecting one from you, yes. But what I would submit is that, no, I would submit that the order was actually based on the facts at the time. Because remember, let's not forget that this, that Judge Browning's order was based on evidence that was presented at a hearing where there was scientific justification for the order. So I know I'm not submitting that, or I'm not necessarily conceding on that constitutionality issue of this prior order. What I am saying is, is that it's moot either way because Tandon changed the analysis going forward. And in terms of expanding the scope of what counts like in the bucket of we're going to, of what we're going to use to compare the, the, the orders. So for example, what I would have said to you before was, you know, several months ago was the bucket that we're going to use are things like movie theaters and concert halls and closed spaces where people gather together for an extended period of time. And what I would note is that those have been closed throughout the pandemic and have only very recently been able to open at very limited capacity. So that would have been, and I think that would have been very consistent with the Supreme court's guidance in the employment division versus Davis and the Kumi and everything else. That would have been what we would have used before. I think now if the comparator is what, and the comparator is basically what I would submit is probably people in the same place for a long period of time. But the Supreme court rejected that, didn't it? I mean, that was exactly in tandem what they were trying to say is that our comparators are great. And we're making a difference between a grocery store where you pass people quickly and church where you sit together in a pew and you sing and the, the court didn't buy it. I agree with you. I agree with you. And so that's why I'm saying the buckets have sort of changed. And so they're, they've expanded what it is that you could that, what you can look at. And so what we've acknowledged, and if we're going to look at mootness in terms of the capable of repetition, what we've acknowledged is that Tandon essentially holds you know, for the proposition that if there's something that's open at a hundred percent, you should allow houses of worship at the very least a strong, strong, strong consideration about whether they should be too. And so that's what we've done. And so if we're looking at capable of repetition, as we noted in our supplemental authority, there's just no intent to go back. So that's why this case is moot. Okay. So you're saying that you've learned from the recent development in the law and that the governor has no intention of blatantly violating Supreme court standards. Absolutely not. And what I would state is that, you know, I also note that it's the secretary of health that issues the orders and not the governor, but, but that Tandon, like I said, everybody's sort of building the boat as we, as we sail it. And Tandon made clear what, what they thought the rubric should be. Are you willing to say that there is just no possibility that anything remotely close to the July 13th order would be reimposed under any conceivable scenario from this point forward? Judge Becker, do you mean the June 30th order? I think it was the decision that was July 30th. Sorry. Okay. No, no problem. Listen, I mean, if you want me, this, this is what we do as lawyers, right? If you want me to come up with this parade of horribles that could happen in the future, that might involve us having to change our analysis, I suppose it's possible, but the reality is it's, it's unlikely. There's no plans to do it. And like I said, I could come up with some really awful scenarios where we might have to consider it, but no, it's not likely to happen. But we don't, we have a declaration already that from her that she has no current or present intention or future intention. I don't know how she can say she had no future intention, but she did. I have no future intention to impose any restriction on churches that is not at least as favorable as, and then she listed, I guess, grocery stores and other things, but are you saying that under Tandon that that isn't sufficient? It needs to go further. She needs to say that I have no intention of imposing a restriction on churches. That is not at least as favorable as any other institution being restricted. I think your honor that given the fact that Tandon is, is what opposing counsel called a shadow opinion. I think we have a very good idea of what the court would rule, but I don't think what we can do is say in the future without knowing what hypothetically might happen in the future, that we're not going to have any additional public health orders. What we can say is that what we will not do is violate established precedent. I mean, that that's, that is a given, and now we have it and now we have the guidance. And so if something changes and the world goes down the tubes and we have, And I, I submit, we would follow the jurisprudence as it exists right now. So what do you think? What do you think that admission is? I mean, she didn't really say, I'm going to follow prior precedent or binding president. She said, I have no intention of treating this first. She said, I have no intention of treating it less favorably than. I think she said restaurants and, and, and grocery stores and other things, but then she went a little bit further the next time around. What do you think? What do you think she should say to really take this off the table for the future? I think she said it, your honor. So I, so for example, I think that the Roman Catholic case makes very clear in terms of, you know, what an essential business is and how, how houses of worship need to be treated at the very least in Roman Catholic. Cause that was the analysis, how they need to be treated in light of essential businesses. I think that Tandon takes it a step further and, and says, you know, essentially if something is at a hundred percent obviously it's going to be, if it's at a hundred percent in the middle of a public health emergency, it's going to be an essential service. And I think everybody's probably struggling over the use of the word essential, but in any event, that, that the churches have to get a similar, so similar treatment. And I think what the secretary's letter says to the court is I see what Tandon says. I see what Roman Catholic says, and I have no intention of deviating from that jurisprudence. I mean, again, if other cases come out and the jurisprudence changes, then, you know, then things might change, but as it stands right now, this is, this is what we plan on doing and we have no plans on changing it. It sounds like this case should have been resolved by a consent decree. Oh, your honor, you know how we feel about consent decrees. I don't. Consent decrees are, are sort of the, uh, the never ending story for us. So we're not going to do it. The third time with consent decrees or the years. Yeah. Um, right. Thank you. Okay. Uh, thank you. Uh, judge Bell, do you, do you have any additional questions? No. Judge McHugh. No. Okay. Uh, the appellant has a one minute. Uh, hold on. Okay. Yeah. You know, I think in response to the panel's questions about, uh, whether or not there's a case judge Browning's 250 page opinion dealt with both the preliminary injunction and permanent injunction and the motion to dismiss all in one. And so that's what was appealed. And it's in the district court record. It's document 80. So I think that's maybe why the issue wasn't raised by the secretary. Um, but I think it was timely appealed and, um, um, properly before the court. If you look, uh, it is July 13th, uh, 2020 and document 80. Well, but you only appealed that you appealed the, um, the April 11th to work. No, I'm sorry. I, I think we have appealed the second one, which is included in this 250 page opinion. So within that is the, uh, order on the motion to dismiss. Um, I guess it depends on what your notice of appeal sets, right? Yeah. I don't think you appealed, or at least I don't think you argued and therefore would have waived a motion to dismiss. You know, our notice of appeal, it actually says, um, um, notice is hereby given that plaintiff legacy church as a party in the above reference case hereby appeals from the United States district court for the district of New Mexico to the United States court for the 10th circuit, the memorandum of opinion and order doc 80 denying the motion for a temporary restraining order, preliminary injunction, and permanent injunction relief, granting the motion to dismiss plaintiff's original complaint and request for a temporary order and permanent injunction during plaintiff's request to amend the complaint and dismissing the action. Let's consider your briefing. The briefing I thought just dealt with the, the, uh, injunctive relief, uh, and not, uh, I mean, I, I think what you just forwarded to a satisfies me that you did appeal the motion to dismiss and the dismissal, but I think your briefs don't discuss that. They only discuss as I got it, the, uh, June, particularly the June 30th, uh, order, uh, although maybe it picked up others as well, but, but not the dismissal. Am I missing something? You know, I think the dismissal was premised on, uh, you know, whether amending would be futile and under the analysis that judge Browning had for the then existing precedent, which I think at that time was South Bay Pentecostal one. And if you look and there's a whole debate about this, that's in our reply brief and the secretary's sir, reply is we raise a lot of these arguments in our reply and the secretary addresses them in her, sir, reply because the case law changed during the course of the briefing. And so when. The merit are the substantive arguments change, but can you point us to a section, a heading, other than just maybe a casual sentence or footnote or something that I might've missed, but can you point me to a heading of any of your briefs that said the dismissal of this action was in error? I cannot. Can I ask you a more general question? Sure. In either your original brief or your reply brief, did you even mention the fact that there was a dismissal? You know how I, as part of the procedural history, we may have, but I would have to go back and check. I don't think it was substantively dealt with as something we were focused on getting this court to either remand with instructions or reverse the district court. We did not include that in our request for relief. And that's well, or the body or be the brief. And that's, we're not trying to pick on you, but we're a court of limited jurisdiction ourselves. And we can only address an appellant's argument if they fairly presented the argument to us. And again, I'm not picking on you, but on page six of your opening brief in the standard of review. And this is why I thought, I mean, first of all, I could be mistaken, but I don't think you ever mentioned that there was a dismissal in the district court.   the argument is seven pages from 10 to 15. And it says, the court reviews the denial of a preliminary injunction for abuse of discretion. A district court abuses its discretion by denying a preliminary injunction based on an error of law. The district court's legal conclusions are reviewed de novo. And then you go on to this statement of the issues and the statement of the case. And then the, uh, the argument is seven pages, uh, from 10 to 17 or 16 to 16. I'm sorry. And, uh, I just never saw anything in either of your briefs about even, even mentioning, and I could be wrong, but I, I was, I was really surprised after I read your opening brief. And then I read judge Browning's order to realize that, that the action was dismissed. I didn't know that, you know, I don't think it was raised in any of the briefing. And so we would agree with your assessment of our briefing, uh, that it wasn't addressed and it wasn't, I don't think it was addressed. Okay. The issue of the motion to dismiss is not before us. Then we're proceeding without a pending action. Right. So, so it's sort of this, um, preliminary injunction challenge, um, hanging out there without an action. I think the, the grounds for denying the permanent injunction, uh, or the same grounds for granting the motion to dismiss, uh, for failure to state a claim because the case law at the time didn't support, um, what, uh, the relief that legacy was requesting. And so I think that they are tied in together and then judge Browning analyzed it as if we were permitted leave to amend the complaint and determining that amending the complaint based on the case law at the time would be futile. Um, and so it, you know, we would submit that it broadened the scope of the relief that, or the, uh, what your court can consider. Well, the good news is that you have precedent from an authority higher than ours, which is exactly what you wanted. And so I think you can, you can do the, uh, I guess I can make this reference. If you, any of you remember the church lady dance instead of to do that because you have a hundred percent been vindicated in the relief that you want from an even higher authority than ours, even if we don't decide to proceed on this particular case. Is that higher authority, the church lady herself? No, the church lady is better than us. We don't have jurisdiction over the church lady. All right. Well, on that, on that note, uh, discussing the church lady on Saturday night live, uh, thank you, uh, counsel for both sides. Uh, we appreciate your hard work, your zealous advocacy and this matter will be submitted.